# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46452-7-II |
| Respondent, | |
| v. | |
| RICKY DOMERTIOUS AMES, | UNPUBLISHED OPINION |
| Appellant | |

J. SUTTON — Ricky Domertious Ames was convicted of three counts of felony violation of a no-contact order. He appeals one of these convictions as well as his sentence, arguing that (1) the State failed to prove every element of Count 1 beyond a reasonable doubt, and (2) the trial court abused its discretion in declining to impose an exceptional sentence below the standard range for mitigating circumstances. We hold that the State presented sufficient proof of every element of Count 1, felony violation of a no-contact order, and that the trial court did not abuse its discretion in declining to impose an exceptional sentence below the standard range. Therefore, we affirm.

## FACTS

Ames and Deshauna Hills began a romantic relationship with each other in 2009. The trial court entered a no-contact order in 2011 prohibiting Ames from "directly or indirectly" contacting Hills "in person, in writing, by telephone . . . or through any other person" for five years. CP 31; Ex. 5. Hills knew about the no-contact order, but she allowed Ames to reside with her for about a year. Hills ended their relationship in June 2013, although it had been "off and on" subsequent to

entry of the no-contact order. 1 Verbatim Report of Proceedings (VRP) at 39-40. In the fall of 2013, Hills learned that she was pregnant and she believed that Ames was the father.

After their relationship ended in June 2013, Ames continued to try to contact Hills. He came to Hills's apartment twice, on September 13 and 17, and called her numerous times. On August 23 and 25, Ames left two voicemail messages for Hill about her pregnancy and retrieving his belongings from her apartment. In the fall of 2013, Ames came to Debra Ramberg's apartment, Hills's neighbor, and asked her to send a message to Hills about his belongings.

The State charged Ames with three counts of felony violation of a domestic violence no-contact order.[1] Count 1 alleged that Ames violated the no-contact order during the period between August 23, 2013, and September 16, 2013. The to-convict jury instruction for Count 1 instructed the jury that to find Ames guilty of that count the State must have proved beyond a reasonable doubt that during the period of August 23 to September 16, 2013, Ames knowingly violated a provision of the no-contact order.[2] The jury found Ames guilty of all three charges, but did not find that the offenses were domestic violence.

---

[1] The State's first information charged Ames with only one count of violating a domestic violence no-contact order. On the day of trial, the State filed an amended information charging two additional counts of violating a no-contact order.

[2] The jury instruction provided five elements that the State must prove beyond a reasonable doubt: (1) during the period of August 23, 2013, to September 16, 2013, there existed a no-contact order against Ames, (2) Ames knew about the no-contact order, (3) during this time period Ames knowingly violated a provision of the no-contact order, and (4) these acts occurred in the State of Washington. Because the State included the specific dates in the information and the to-convict jury instruction, the State assumed the burden of proving that Ames's contact with Hills occurred between those dates. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998).

At sentencing, Ames asked the trial court to impose an exceptional sentence below the standard range for his convictions. Ames argued that the evidence at trial showed that Hills "was a voluntary and willing participant in violating the no contact order" because the parties lived together and dated during the no-contact order period and because she was pregnant with a baby she believed Ames fathered, indicating recent sexual activity. CP at 58. The trial court, after additional colloquy about its discretion, denied Ames's request and sentenced him to the standard range. Ames appeals.

ANALYSIS

I. THE STATE PROVED EVERY ELEMENT OF COUNT 1 BEYOND A REASONABLE DOUBT

Ames argues that the State failed to meet its burden to prove every element of Count 1 beyond a reasonable doubt because it did not present sufficient evidence that Ames violated the no-contact order during the period alleged in Count 1, August 23 to September 16, 2013. Specifically, Ames incorrectly implies that the State presented evidence that he contacted Hills only on September 17. We disagree.

Due process requires the State to prove every element of the charged crimes beyond a reasonable doubt. *State v. Kalebaugh*, No. 89971-1, 2015 WL 4136540, at *3 (Wash. July 9, 2015). To determine if the State presented sufficient evidence, we view the evidence in the light most favorable to the prosecution and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Condon*, 182 Wn.2d 307, 314, 343 P.3d 357 (2015). An appellant's claim of insufficient evidence admits the truth of the State's evidence and "'all inferences that reasonably can be drawn therefrom.'" *Condon*, 182 Wn.2d at 314 (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

The State presented sufficient evidence that Ames violated the no-contact order during the period alleged in Count 1, August 23, 2013, and September 16, 2013. The trial court's to-convict jury instruction told the jury that it must find Ames contacted Hills "on or about" these same dates. CP at 48. Hills testified that Ames came to her apartment on September 13 and September 17. The State argued to the jury that it was Ames's September 13 contact that violated the no-contact order as alleged in Count 1. The State presented sufficient evidence for the jury to find every element of Count 1 beyond a reasonable doubt because September 13 is within the dates listed in the State's charging document.

## II. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DECLINING TO SENTENCE AMES BELOW THE STANDARD RANGE

Ames also argues that the trial court abused its discretion in declining to impose an exceptional sentence below the standard sentencing range. We disagree.

The trial court must generally impose a sentence within the standard sentencing range under the Sentencing Reform Act (SRA).[3] *State v. Graham*, 181 Wn.2d 878, 882, 337 P.3d 319 (2014). The trial court may exercise its discretion by imposing a sentence below the standard range, however, if "substantial and compelling reasons" justify an exceptional sentence. RCW 9.94A.535. The trial court must find that mitigating circumstances justifying a sentence below the standard range are established by a preponderance of the evidence. RCW 9.94A.535(1).

---

[3] Ch. 9.94A RCW.

One of the possible factors that a trial court may use to justify an exceptional downward sentence is if "[t]o a significant degree, the victim was [a] . . . willing participant." RCW 9.94A.535(1)(a). The trial court may exercise its discretion to consider this mitigating factor in imposing a sentence for violation of a no-contact order. *State v. Bunker*, 144 Wn. App. 407, 421, 183 P.3d 1086 (2008) (rejecting the State's argument that because consent is not a defense to the crime of violating a no-contact order the trial court is prohibited from considering the victim's willing participation in the crime when sentencing the defendant).

A trial court's sentence within the standard range is generally not reviewable. RCW 9.94A.585(1). A trial court abuses its discretion, however, when it categorically refuses to exercise its discretion to impose an exceptional sentence below the standard range "'under any circumstances.'" *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005) (quoting *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997)). In contrast, where a trial court considers the facts of the case and concludes that there is no factual or legal basis to impose an exceptional downward sentence, it has exercised discretion, and the trial court's ruling is not appealable. *State v. McGill*, 112 Wn. App. 95, 100, 47 P.3d 173 (2002).

In this case, the trial court did not categorically refuse to exercise its discretion when it denied Ames's request for an exceptional downward sentence based upon Hills's apparent participation in Ames's contact with her. Ames is correct that the trial court initially declined to

impose a sentence below the standard range because it did not believe that Hills's consensual contact with Ames made her a "willing participant" under RCW 9.94A.535(1)(a).[4]

Ames's argument, however, does not account for the further colloquy between defense counsel and the trial court. Defense counsel corrected the trial court, citing *Bunker*, explaining that it would not be an abuse of discretion for the trial court to impose an exceptional downward sentence under the willing participant exception for a conviction of violation of a no-contact order. In response, the trial court replied, "Very good. Well, the court is not going to do that. Given the sentence that the Legislature has designated in this matter . . . that will be the sentence of the court." 3 VRP at 169.

Thus, when it denied Ames's request, the trial court was no longer under the erroneous legal impression that it was prohibited from imposing an exceptional downward sentence. Based on the evidence before it, the trial court simply declined to do so. Therefore, the trial court did not abuse its discretion in declining to impose an exceptional sentence below the standard range sentence.

---

[4] The trial court stated that it could not consider the willing participant mitigating factor in a sentence for violation of a no-contact order.

No. 46452-7-II

We hold that the State presented sufficient proof of every element beyond a reasonable doubt of Count 1, felony violation of a no-contact order, and that the trial court did not abuse its discretion in declining to impose an exceptional sentence below the standard range. Therefore, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

J. SUTTON

We concur:

P.J. WORSWICK

J. LEE

7