# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51000-6-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| KENNITH CORNELL BOWENS, | |
| Appellant. | |

GLASGOW, J. — Kennith C. Bowens was prohibited from having contact with Kindra Marcus, his wife, based on a domestic violence no contact order. In violation of the order, Bowens made contact with Marcus several times through the Clark County Jail's video and traditional jail call systems while he was in jail on an unrelated charge. Bowens was convicted of five counts of violation of a domestic violence no contact order and one count of witness tampering. He appeals his standard range sentences.

Bowens argues that the trial court abused its discretion in declining to grant an exceptional sentence downward because, he says, the trial court mistakenly believed that willing victim participation in the phone calls could not be a mitigating factor. He also contends that he received ineffective assistance of counsel at sentencing because his counsel failed to cite to a recent case that would have notified the sentencing court of its discretion to impose an exceptional sentence downward.

We conclude the trial court was aware that willing victim participation was a statutory mitigating factor and hold that the trial court did not abuse its discretion when it declined to impose an exceptional sentence. We also hold that because defense counsel at sentencing cited to the proper statutory authority, counsel's representation was not deficient and Bowens's claim of ineffective assistance fails. We affirm Bowens's standard range sentences.

FACTS

I. BACKGROUND FACTS

During the relevant time period, the Clark County Jail used the Telmate system for phone communications and video visits with people outside the jail, similar to FaceTime video or Skype. When an inmate was booked, the jail staff registered them through the Telmate system and gave them a personal identification number. In order to make a video call, the inmate or the person on the outside could schedule an appointment in advance and the other person had to accept the invitation. In addition to the video call system, inmates in the Clark County Jail could also make traditional phone calls.

Bowens made several video calls to Marcus during his time in the jail. When deputies blocked her number, Marcus would get another number with a different name on the account so that she could receive calls from Bowens. In addition, Bowens made a call from another inmate's account to a phone number listed to someone named "Jim Bass." Verbatim Report of Proceedings (VRP) at 194. However, the person on the other end of the call was Marcus.

Based on Bowens's calls to Marcus while he was in the Clark County Jail, the State charged Bowens with five counts of Felony Domestic Violence Court Order Violation and one count of Tampering with a Witness (Domestic Violence).

## II. TRIAL AND SENTENCING

At trial, the State presented evidence about the jail's communications systems and Bowens's repeated contacts with Marcus. Recordings of the video calls and traditional phone calls were played for the jury. During one call, in a conversation about his upcoming trial, Bowens told Marcus that she needed to "make [her]self scarce and not be there so they probably trying to get you—you need still not be there." VRP at 185. He also said that "it jams them up to where they have no choice but to dismiss—do you understand what I'm saying? That's why I'm getting on you." VRP at 186. Bowens asked Marcus: "[W]hat are you going to say [to the prosecutor]?" and Marcus replied: "Well I love you." VRP at 172. Based on this evidence, the jury found Bowens guilty on all charges.

At sentencing, the prosecutor explained that the standard range sentence for each count of violation of the no contact order was 60 months, while the standard range for the one count of witness tampering was 51 to 60 months.

The prosecutor argued that there were several uncharged attempts to contact Marcus where the call went unanswered. And even after Bowens was charged for the video calls, he continued to contact Marcus through other inmates' phone accounts. Again, even after these additional calls were added to the charges, Bowens continued to call Marcus. The prosecutor also noted Bowens's lengthy criminal history that included convictions involving domestic violence in 1994, 1995, 1996, 1998, 1999, 2002, 2005, 2007, 2008, and 2010, in addition to other crimes.

A victim's advocate read a statement from Marcus asking for "the least invasive" sentence for Bowens, in part because Marcus was pregnant with his daughter. VRP at 386-87.

She said that she loved Bowens and wanted him to be a part of her children's lives because he was a supportive father. Finally, the advocate conveyed that Marcus felt the no contact order was "pushed on" her to avoid Child Protective Services' involvement. VRP at 387.

Bowens requested an exceptional sentence downward based on Marcus's willing participation under RCW 9.94A.535(1)(a). He argued that because "you have to have two people participating in [the calls] . . . [s]he's obviously a . . . willing participant in . . . these violations of No Contact Orders." VRP at 388. "The second . . . was the Tampering and the other were . . . phone calls on different numbers and obviously she had to . . . make an effort to . . . have this . . . contact occur . . . under different phone numbers." VRP at 388.[1]

The following exchange then occurred:

[Trial Court]:            We've got to employ [a] kind of two part test to determine whether or not an exceptional sentence either downward or upward. And certainly we can't go upward because sixty months is at the top end of the . . . range. I mean it's the very top. We can't go beyond that.

Now the question is do I have enough to support an appellate review to go down? And I . . . apologize—unless I'm missing something—but I'm just not—other than just personal to him—he's the one that made the calls from the jail. It's not like she was . . . an aggressor . . . in that respect.

[Defense Counsel]:       Well—no—a willing participant I think—accepted—

---

[1] While Bowens's request for an exceptional sentence downward focused on Marcus's willing participation in the calls, he did not limit his request only to the five counts of felony violation of a court order, nor did his assignments of error limit his argument on appeal only to those convictions.

4

> [Trial Court]: Most of the . . . exceptional downwards—the case law on it—most of the exceptional downwards was where the victim was an aggressor in the case. And that's kind of what they key on.
>
> [Defense Counsel]: [R]ight. And that's one of the factors—and what I'm focusing on is willing participant and . . . my point in that Your Honor is that in order to set up these calls both parties have to arrange for it and . . . then it has to be approved.

VRP at 391-92.

The trial court later explained its decision to decline to impose the exceptional sentence:

> Okay. So here's the law, okay? Here's the law as I understand it. In—in doing this analysis of an exceptional down or up I've got to consider two factors. The first factor:
>
> "*The trial court may not base an exceptional sentence on factors necessarily considered by the legislature in establishing a standard range.*"
>
> We clearly don't have that here. I—we can't even get past the first one.

VRP at 393-94 (quoting *State v. Law*, 154 Wn.2d 85, 95, 110 P.3d 717 (2005)). But the trial court did not stop there. The judge went on to explain:

> The second one is the mitigating factors of her answering the phone is really all we've got as mitigating factors – she answers the phone so:
>
> "*The mitigating factor must be sufficiently substantial and compelling to distinguish this crime from others in the same category.*"
>
> *And I can't get there either*. So under the law the appellate review would send it right back for re-sentencing. So your request for an exceptional sentence downwards is denied.

VRP 393-94 (second emphasis added) (quoting *Law*, 154 Wn.2d at 95).

The trial court imposed the standard range sentence of 60 months for each conviction for violation of the no contact order and 51 months for the conviction for witness tampering, all to be served concurrently. Bowens appeals his standard range sentences.

5

ANALYSIS

I. DECISION NOT TO IMPOSE AN EXCEPTIONAL SENTENCE

Bowens first argues that the trial court erred as a matter of law by declining to consider his request for an exceptional sentence downward based on the victim's willing participation. He contends the trial court decided that it could not consider the willing participant factor in determining whether to impose an exceptional sentence. We disagree.

A.       Exceptional Sentences Departing Downward from the Standard Range

A trial court "may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence." RCW 9.94A.535(1). One potential mitigating factor is, "[t]o a significant degree, the victim was an initiator, *willing participant*, aggressor, or provoker of the incident." RCW 9.94A.535(1)(a) (emphasis added).

A decision to impose a standard range sentence is generally not reviewable. RCW 9.94A.585(1). When a defendant has requested an exceptional sentence below the standard range, this court's "review is limited to circumstances where the [trial] court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range." *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997). We review a sentencing court's decision to deny an exceptional sentence for abuse of discretion. *State v. McGill*, 112 Wn. App. 95, 100, 47 P.3d 173 (2002); *State v. O'Dell*, 183 Wn.2d 680, 697, 358 P.3d 359 (2015), *review denied*, 189 Wn.2d 1007 (2017).

6

"While no defendant is entitled to an exceptional sentence below the standard range, every defendant *is* entitled to ask the trial court to consider such a sentence and to have the alternative actually considered." *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005) (emphasis added). A trial court "refuses to exercise its discretion if it refuses categorically to impose an exceptional sentence below the standard range under any circumstances; i.e., it takes the position that it will never impose a sentence below the standard range." *Garcia-Martinez*, 88 Wn. App. at 330. "A trial court's erroneous belief that it lacks the discretion to depart downward from the standard sentencing range is itself an abuse of discretion warranting remand." *State v. Bunker*, 144 Wn. App. 407, 421, 183 P.3d 1086 (2008).

Conversely, where a trial court has considered the facts and the law, and has determined that there is no basis for an exceptional sentence, then the court has exercised its discretion. *Garcia-Martinez*, 88 Wn. App. at 330-31. In other words, where a trial court has determined that there is no basis for sentencing outside of the standard range and it therefore states that it could not impose a downward departure, that is an appropriate exercise of sentencing discretion. *Id.*

B.      The Trial Court Properly Considered the Victim's Willing Participation

Bowens relies on *Bunker* to contend that the sentencing court would have imposed an exceptional downward sentence had it known that the victim's willing participation constituted a mitigating factor. He argues that the trial court erred as a matter of law when it reasoned that the potential for willing victim participation was "necessarily considered by the legislature in establishing a standard range." VRP at 393. Bowens also asserts that the trial court erred when it conflated willing participation with whether the victim was a first aggressor.

7

The trial court acted within its discretion when it considered and rejected Bowens's request for an exceptional sentence based on the victim's willing participation. *Bunker* is distinct from this case because in *Bunker*, the trial court expressed a willingness to impose an exceptional sentence absent what it perceived as a legal bar to doing so. *Bunker*, 144 Wn. App. at 411. Here, the trial court did not express such a willingness.

The trial court first concluded that Bowens could not overcome the prohibition on imposing an exceptional sentence based on factors necessarily considered by the legislature in establishing the standard range. The court then stated:

> [T]he mitigating factors of—her answering the phone is really all we've got as mitigating factors—she answers the phone so:
>
> *"The mitigating factor must be sufficiently substantial and compelling to distinguish this crime from others in the same category."*
>
> *And I can't get there either.*

VRP at 393-94 (second emphasis added) (quoting *Law*, 154 Wn.2d at 95). The trial court's conclusion that it could not "get there either," indicates that this was an independent reason for denying the exceptional sentence. The trial court considered the fact that Marcus "answer[ed] the phone," but it did not find that fact "sufficiently substantial and compelling" to justify an exceptional sentence downward. VRP at 393-94.

Regardless of whether the trial court stated that there was a legal bar to an exceptional downward departure, it went on to determine whether substantial and compelling mitigating factors, including Marcus's participation, distinguished this crime from others in the same

8

category.  Thus, the trial court did not "'refuse[] categorically'" to consider an exceptional sentence below the standard range under any circumstances.  *Grayson*, 154 Wn.2d at 342 (quoting *Garcia-Martinez*, 88 Wn. App. at 330).  An articulation of a valid reason for rejecting the exceptional sentence is acceptable.  *See id.* (noting that the trial court did not articulate other reasons for denying the requested sentence).  Here, the trial court properly exercised its discretion when it declined to impose an exceptional sentence based on the facts before it.

Bowens also argues that the trial court failed to consider whether Marcus's acts of setting up appointments to talk, using a fake identity and varying phone numbers, and registering to receive calls from other inmates's accounts demonstrated that she was a willing participant.  He contends that the trial court erred when it declined to impose an exceptional sentence in these circumstances.  But Bowens simply disagrees with the weight the trial court gave to certain facts. We do not reverse a standard range sentence except "where the [trial] court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range."  *Garcia-Martinez*, 88 Wn. App. at 330.  We hold that the trial court did not abuse its discretion here.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Bowens next argues that "[t]rial counsel was ineffective for failing to cite the proper authority that gives the . . . court power to impose an exceptional sentence based on the willing participant doctrine."  Br. of Appellant at 2, 10.  We hold that Bowens's argument fails because trial counsel cited to the proper statutory authority that put the trial court on notice of its

discretion to impose an exceptional sentence based on the victim's willing participation.

A.      Burden to Show Ineffective Assistance

In order to establish ineffective assistance of counsel, Bowens must show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Counsel's performance is deficient when it falls below an objective standard of reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To show prejudice, a defendant must show that there is a probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *McFarland*, 127 Wn.2d at 335.

There is a strong presumption of effective assistance, and the defendant bears the burden of demonstrating the absence of a strategic reason for the challenged conduct. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). Failure to cite to controlling case law can constitute deficient performance. *State v. Hernandez-Hernandez*, 104 Wn. App. 263, 266, 15 P.3d 719 (2001).

B.      Counsel's Performance Was Not Deficient

Bowens argues that trial counsel's failure to cite to *Bunker* as "on-point, recent authority" was ineffective assistance. Reply Br. of Appellant at 6. We disagree. Trial counsel was not deficient because he advised the trial court of the correct statutory authority supporting the request for an exceptional sentence and corrected the court when it conflated the concept of a victim-aggressor with willing victim participation. While it is true that failure to cite to

controlling case law can constitute ineffective assistance of counsel, the record shows that

Bowens's trial counsel properly cited to RCW 9.94A.535(1)(a), which gave the trial court notice

of its authority to impose an exceptional sentence downward based on the victim's willing

participation. *See Hernandez-Hernandez*, 104 Wn. App. at 266.

Moreover, Bowens cannot show that he was prejudiced because the trial court made no

statements on the record that indicated any openness toward an exceptional sentence. *See State*

*v. McFarland*, 189 Wn.2d 47, 58, 399 P.3d 1106 (2017). Instead, the trial court was aware that

willing participation was a mitigating factor, but simply determined that Marcus's participation

in the form of "answering the phone" was not "sufficiently substantial and compelling" for an

exceptional sentence downward. VRP at 393-94.

Therefore, trial counsel's performance was not deficient, nor was it prejudicial. We hold

that Bowens's ineffective assistance of counsel claim fails and we affirm the standard range

sentence.

### III. APPELLATE COSTS

Bowens requests that this court not impose appellate costs against him because he is

indigent. The State explained that it will not seek appellate costs. Therefore, we accept the

State's representation and decline to impose appellate costs against Bowens.

### CONCLUSION

For the foregoing reasons, we affirm Bowens's standard range sentences.

A majority of the panel having determined that this opinion will not be printed in the

No. 51000-6-II

Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040,

it is so ordered.

_____
Glasgow, J.

We concur:

_____
Worswick, J.

_____
Lee, A.C.J.